# LIST OF EXHIBITS

Exhibit A.   Meadows's Notice of Removal in the Georgia Case

Exhibit B.   Letter from Mr. Terwilliger to Mr. Klingerman Dated July 22, 2024

Exhibit C.   Print-out of Meadows's Incoming and Outgoing Messages from November 3, 2020, to January 20, 2021 (Part 1).

Exhibit D.   Print-out of Meadows's Incoming and Outgoing Messages from November 3, 2020, to January 20, 2021 (Part 2).

Exhibit E.   Print-out of Meadows's Incoming and Outgoing Messages from November 3, 2020, to January 20, 2021 (Part 3).

Exhibit F.   Letter from Meadows's Counsel Describing Messages Transmitted to the January 6th Committee.

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| THE STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | Criminal Case No. _____ |
| | ) | |
| MARK R. MEADOWS, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## NOTICE OF REMOVAL

Defendant Mark R. Meadows, former Chief of Staff to the President of the United States, removes this proceeding from the Fulton County Superior Court (Case No. 23SC188947, filed August 14, 2023), insofar as it charges Mr. Meadows in two counts (Counts 1 and 28) of a 41-count indictment, to the United States District Court for the Northern District of Georgia under 28 U.S.C. §§ 1442 & 1455.

Mr. Meadows has the right to remove this matter. The conduct giving rise to the charges in the indictment all occurred during his tenure and as part of his service as Chief of Staff. In these circumstances, federal law provides for prompt removal of a "criminal prosecution . . . commenced in a State court . . . against or directed to" a federal official, "in an official or individual capacity, for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). The removal statute "protect[s] the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an

alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 150 (2007) (cleaned up).[1]

Nothing Mr. Meadows is alleged in the indictment to have done is criminal *per se*: arranging Oval Office meetings, contacting state officials on the President's behalf, visiting a state government building, and setting up a phone call for the President. One would expect a Chief of Staff to the President of the United States to do these sorts of things. And they have far less to do with the interests of state law than, for example, murder charges that have been successfully removed. *E.g.*, *In Re Neagle*, 135 U.S. 1, 71 (1890); *Tennessee v. Davis*, 100 U.S. 257, 260–62 (1879). This is precisely the kind of state interference in a federal official's duties that the Supremacy Clause of the U.S. Constitution prohibits, and that the removal statute shields against. *See Neagle*, 135 U.S. at 76 (holding that a federal official carrying out his duties "is not liable to answer in the courts of [a State]").

Mr. Meadows intends to file a motion to dismiss the indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure as soon as is feasible. Mr.

---

[1] Former officials are protected. The relevant question is whether the defendant was a federal official *at the time of the conduct charged*, not at the time of prosecution or removal. *See State of Maryland v. Soper*, 270 U.S. 9, 34–35 (1926); *Camero v. Kostos*, 253 F. Supp. 331, 335 (D.N.J. 1966). Protection of former federal officials protects *current* federal officials from being chilled in the exercise of their federal duties. *See, e.g.*, *Denson v. United States*, 574 F.3d 1318, 1349 (11th Cir. 2009).

Meadows respectfully requests that the Court "order an evidentiary hearing to be held promptly" and "dispos[e] of the prosecution as justice shall require." 28 U.S.C. § 1455(b)(5). Here, justice requires the prompt dismissal of the charges against Mr. Meadows. At a minimum, in the meantime, federal law requires granting removal, which will halt the state-court proceedings against Mr. Meadows, *see* 28 U.S.C. § 1455(b)(5), while the motion to dismiss is resolved.

## I.       This Court Has Jurisdiction, and Removal Is Warranted

This matter—insofar as it relates to charges against Defendant Mark R. Meadows—arises directly from his service as Chief of Staff. Mr. Meadows served in that role from March 31, 2020, until January 20, 2021. Before that, he served as a Member of the U.S. House of Representatives, representing North Carolina's 11th Congressional District, from January 3, 2013, to March 30, 2020.

The events giving rise to the indictment occurred during Mr. Meadows's tenure as White House Chief of Staff and are directly related to that role. The indictment sets forth the following factual allegations (and only the following factual allegations) as they relate to Mr. Meadows:

- "On or about the **20th day of November 2020**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with Majority Leader of the Michigan Senate Michael Shirkey, Speaker of the Michigan House of Representatives Lee Chatfield, and other Michigan legislators in the Oval Office at the White House, and **DONALD JOHN TRUMP** made false statements concerning fraud in the November 3, 2020, presidential election in Michigan." Indictment at 20, Count I, Act 5.

3

- "On or about the **21st day of November 2020**, **MARK RANDALL MEADOWS** sent a text message to United States Representative Scott Perry from Pennsylvania and stated, 'Can you send me the number for the speaker and the leader of PA Legislature. POTUS wants to chat with them.'" Indictment at 20, Count I, Act 6.

- "On or about the **25th day of November 2020**, . . . **DONALD JOHN TRUMP**, **MARK RANDALL MEADOWS**, **RUDOLPH WILLIAM LOUIS GIULIANI**, **JENNA LYNN ELLIS** and unindicted co-conspirators Individual 5 and Individual 6, whose identities are known to the Grand Jury, met with the group of Pennsylvania legislators at the White House and discussed holding a special session of the Pennsylvania General Assembly." Indictment at 22, Count I, Act 9.

- "On or between the **1st day of December 2020 and the 31st day of December 2020**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** met with John McEntee and requested that McEntee prepare a memorandum outlining a strategy for disrupting and delaying the joint session of Congress on January 6, 2021, the day prescribed by law for counting votes cast by the duly elected and qualified presidential electors from Georgia and the other states." Indictment at 24, Count I, Act 19.

- "On or about the **22nd day of December 2020**, **MARK RANDALL MEADOWS** traveled to the Cobb County Civic Center in Cobb County, Georgia, and attempted to observe the signature match audit being performed there by law enforcement officers from the Georgia Bureau of Investigation and the Office of the Georgia Secretary of State, despite the fact that the audit process was not open to the public. While present at the center, **MARK RANDALL MEADOWS** spoke to Georgia Deputy Secretary of State Jordan Fuchs, Office of the Georgia Secretary of State Chief Investigator Frances Watson, Georgia Bureau of Investigation Special Agent in Charge Bahan Rich, and others, who prevented **MARK RANDALL MEADOWS** from entering into the space where the audit was being conducted." Indictment at 44, Count I, Act 92.

- "On or about the **23rd day of December 2020**, **DONALD JOHN TRUMP** placed a telephone call to Office of the Georgia Secretary of State Chief Investigator Frances Watson that had been previously arranged by **MARK RANDALL MEADOWS**. During the phone call, **DONALD JOHN TRUMP** falsely stated that he had won the November 3, 2020, presidential election in Georgia 'by hundreds of thousands of votes' and stated to Watson that 'when the right answer comes out you'll be praised.'" Indictment at 44, Count I, Act 93.

- "On or about the **27th day of December 2020**, **MARK RANDALL MEADOWS** sent a text message to Office of the Georgia Secretary of State Chief Investigator Frances Watson that stated in part, 'Is there a way to speed up Fulton county signature verification in order to have results before Jan 6 if the trump campaign assist financially.'" Indictment at 45, Count I, Act 96.

- "On or about the **2nd day of January 2021**, **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** committed the felony offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER**, in violation of **O.C.G.A. §§ 16-4-7 & 16-10-1**, in Fulton County, Georgia, by unlawfully soliciting, requesting, and importuning Georgia Secretary of State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct." Indictment at 50, Count I, Act 112.

- "And the Grand Jurors aforesaid, in the name and behalf of the citizens of Georgia, do charge and accuse **DONALD JOHN TRUMP** and **MARK RANDALL MEADOWS** with the offense of **SOLICITATION OF VIOLATION OF OATH BY PUBLIC OFFICER, O.C.G.A. §§ 16-4-7 & 16-10-1**, for the said accused, individually and as persons concerned in the commission of a crime, and together with unindicted co-conspirators, in the County of Fulton and State of Georgia, on or about the **2nd day of January 2021**, unlawfully solicited, requested, and importuned Georgia Secretary of

State Brad Raffensperger, a public officer, to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § l6-10-1, by unlawfully altering, unlawfully adjusting, and otherwise unlawfully influencing the certified returns for presidential electors for the November 3, 2020, presidential election in Georgia, in willful and intentional violation of the terms of the oath of said person as prescribed by law, with intent that said person engage in said conduct, contrary to the laws of said State, the good order, peace and dignity thereof." Indictment at 87, Count 28.

The charged conduct comprises acts taken by Mr. Meadows, whether in an individual or official capacity, under color of his role as Chief of Staff to the President of the United States. *See* 28 U.S.C. § 1442(a)(1).

As is apparent on the face of the indictment, as part of his official duties as Chief of Staff, Mr. Meadows arranged meetings for the President at the White House and communicated with state lawmakers and officials. Mr. Meadows went to a site in Fulton County where the Chief Investigator was conducting an audit of the results of the 2020 Presidential election because—and only because—he was serving as Chief of Staff. He wanted to report back to the President on how the audit was proceeding and told him the following day that the Georgia officials were conducting their work in exemplary fashion. Shortly thereafter, Mr. Meadows, in his role as Chief of Staff, arranged a phone call between the President and Georgia officials, including the Secretary of State and the Chief Investigator. These and the other acts that form the basis for the charges against Mr. Meadows all fall squarely within his conduct as Chief of Staff.

Defendant Meadows has defenses to the charges in this Georgia indictment that arise under federal law, including a federal immunity defense under the Supremacy Clause of the Federal Constitution. *See* U.S. CONST., art. vi, cl. 2; *Neagle*, 135 U.S. at 57; *Kordash v. United States*, 51 F.4th 1289, 1293 (11th Cir. 2022); *Denson v. United States*, 574 F.3d 1318, 1345–46 (11th Cir. 2009).

For purposes of removal under 28 U.S.C. § 1442(a)(1), it is enough that the defendant has a "plausible" federal defense to the charges against him. *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1145 (11th Cir. 2017). Here, the charges against Mr. Meadows far exceed that low threshold. Indeed, as explained below, it is clear from the face of the indictment that the charges against Mr. Meadows should be dismissed under the Supremacy Clause. But for purposes of removal, the Court need not make that determination. Mr. Meadows is entitled to remove this action to federal court because the charges against him plausibly give rise to a federal defense based on his role at all relevant times as the White House Chief of Staff to the President of the United States.

## II. This Notice Satisfies the Procedural Requirements of 28 U.S.C. § 1455

Consistent with the requirements of 28 U.S.C. § 1455, Mr. Meadows is filing this notice before trial and no later than 30 days after arraignment, and the grounds for removal are set forth herein. *See id.* § 1455(b)(1)–(2). This notice is filed in the district and division within which is prosecution is pending, it is signed by counsel

7

pursuant to Rule 11 of the Civil Rules, and it contains a short and plain statement of the grounds for removal. *See id.* § 1455(a). No process, pleadings, or orders have yet been served upon Mr. Meadows in this action, *see id.*, but this notice also includes as an attachment the publicly filed indictment, which sets forth the charges against Mr. Meadows and other defendants. While removal can be initiated later in the criminal process, the filing of an indictment has "commence[d]" for a "criminal prosecution in State court," *id.*, at the time of indictment, triggering the right to removal. *See, e.g.*, *Post v. United States*, 161 U.S. 583, 587 (1896) (explaining that a criminal proceeding commences once "a formal charge is openly made against the accused, either by indictment presented or information filed in court, or, at the least, by complaint before a magistrate").

## III. The Court Should Promptly Hold an Evidentiary Hearing and Either Dismiss the Charges Outright, or at a Minimum, Grant Removal and Notify the State Court

The filing of this notice does not automatically stay the state court proceedings against Mr. Meadows, "except that a judgment of conviction shall not be entered" while this notice remains pending. *Id.* § 1455(b)(3). Mr. Meadows respectfully asks that the Court promptly hold an evidentiary hearing and either dismiss the charges outright based on the Supremacy Clause, or at a minimum, grant removal and notify the state court so as to halt any further state-court proceedings against him. *See id.* § 1455(b)(5). Section 1455(b)(5) provides that, if the Court "does not order the

summary remand of [a removed] prosecution"—which would be wholly unjustified here—then "it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make disposition of the prosecution as justice shall require." *Id*.

Mr. Meadows respectfully submits that the most just disposition is for the charges against him to be promptly dismiss pursuant to the Supremacy Clause. The basis for that conclusion is apparent from the facts of the case and the face of the indictment.[2] Even if the Court is not prepared to dismiss outright at this early stage, however, justice requires granting removal and halting any further state-court proceedings against Mr. Meadows. That will allow for the timely consideration of Mr. Meadows's defenses, including his federal defense under the Supremacy Clause, without requiring him to defend himself in state court simultaneously.

***First***, the Court should "promptly . . . make disposition of the prosecution as justice shall require," 28 U.S.C. § 1455(b)(5), by dismissing all charges against Mr. Meadows—the Chief of Staff to the President of the United States at the time of the alleged conduct—under the Supremacy Clause of the U.S. Constitution. The Supremacy Clause provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the

---

[2] Mr. Meadows will submit a separate motion to dismiss at a later date which more fully sets forth the facts and the law supporting dismissal.

constitution or laws of any state to the contrary notwithstanding." U.S. CONST., art.
VI, cl. 2. The Supreme Court has long interpreted the Supremacy Clause to provide
federal officials "immunity from suit" involving state charges in order to "protect[]
federal operations from the chilling effect of state prosecution." *New York v. Tanella*,
374 F.3d 141, 147 (2nd Cir. 2004); *see generally In Re Neagle*, 135 U.S. 1 (1890);
*Tennessee v. Davis*, 100 U.S. 257 (1879). "[T]he states have no power . . . to retard,
impede, burden, or in any manner control, the operations of the constitutional laws
enacted by congress to carry into execution the powers vested in the general
government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819). Thus,
while the police power, including the power to define and punish crimes, is generally
reserved to the States, that power may not be employed against the Federal
Government to "exclude it from the exercise of any authority conferred upon it by
the constitution, obstruct its authorized officers against its will, or withhold from it
for a moment the cognizance of any subject which that instrument has committed to
it." *Neagle*, 135 U.S. at 62 (quoting *Davis*, 100 U.S. at 263).[3]

---

[3] Since *Neagle*, the Supreme Court has addressed Supremacy Clause immunity only
rarely. The two most notable decisions came within 20 years of *Neagle*.

   In *Ohio v. Thomas*, 173 U.S. 276 (1899), the Court held that Ohio could not
prosecute a federal official for serving margarine in a home for disabled veterans
without placing a sign in the window, as required under Ohio law. The Court held
that Congress had appropriated money to buy the margarine, and that serving it "was
therefore legal, any act of the state to the contrary notwithstanding," under the
Supremacy Clause. *Id.* at 283–84.

States are thus broadly prohibited from bringing "suits under state law against federal officials carrying out their executive duties." *Kordash*, 51 F.4th at 1293; *see also Denson*, 574 F.3d at 1345–46 ("[T]he Supremacy Clause . . . serves to prevent state law or state law officials from interfering with or otherwise impeding federal officers as they perform their lawful duties."). Federal-officer immunity has been widely recognized and applied robustly, including in cases from the Second, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits.[4]

A federal official is entitled to immunity if he "'was authorized to do [what he did] by the law of the United States,'" if "'it was his duty to do [it] as [an officer] of the United States,'" and if "'in doing that act he did no more than what was necessary and proper for him to do.'" *Denson*, 574 F.3d at 1347 (quoting *Neagle*, 135 U.S. at 57) (alterations in original). At a general level, the inquiry turns on

---

In *United States ex rel. Drury v. Lewis*, 200 U.S. 1 (1906), the Court affirmed a denial of immunity for soldiers being prosecuted for murder. There was conflicting testimony about whether the fatal shots were fired in hot pursuit of a suspected thief—or instead whether one soldier ordered, and the other soldier carried out, the execution of a civilian who had already surrendered to their pursuit. *See id.* at 3–5. The Court held that pre-trial immunity was unavailable in light of this "conflict of evidence" because it had been "conceded that if [the soldiers had executed the man after he surrendered], it could not reasonably be claimed that the fatal shot was fired in the performance of a duty imposed by the Federal law." *Id.* at 8.

[4] *See New York v. Tanella*, 374 F.3d 141, 144 (2d Cir. 2004); *State v. Kleinert*, 855 F.3d 305, 313 (5th Cir. 2017); *Com. of Ky. v. Long*, 837 F.2d 727, 734 (6th Cir. 1988); *Clifton v. Cox*, 549 F.2d 722, 728 (9th Cir. 1977); *Wyoming v. Livingston*, 443 F.3d 1211, 1217 (10th Cir. 2006); *Baucom v. Martin*, 677 F.2d 1346, 1348 (11th Cir. 1982).

"whether the officer's acts have some nexus with furthering federal policy and can reasonably be characterized as complying with the full range of federal law." *Id.* at 1348. While the phrase "no more than necessary" might suggest a narrow scope of immunity, that is not how the Courts of Appeals have applied it. They unanimously agree that federal authority under *Neagle* is a question of the official's general role and authority, not specific authorization for the conduct that allegedly constitutes a criminal act.[5]

Here, it is unmistakably clear that the indictment charges Mr. Meadows with alleged state crimes based on acts he took as Chief of Staff to the President of the United States and in the course of his duties in the position. *See generally supra* Part I. He is therefore entitled to immunity from suit under the Supremacy Clause, and in order to "make disposition of the prosecution as justice shall require," 28 U.S.C. § 1455(b)(5), the Court should dismiss all charges against Mr. Meadows.

---

[5] *See Tanella*, 374 F.3d at 147 ("No one disputes that Tanella was acting in his capacity as a federal DEA Agent when he shot Dewgard."); *Kleinert*, 855 F.3d at 317 ("With probable cause of two federal felonies, Kleinert was authorized to arrest Jackson under 21 U.S.C. § 878."); *Long*, 837 F.2d at 745 ("[E]ven though an agent exceeds his express authority, he does not necessarily act outside of the authority conferred by the laws of the United States."); *Clifton*, 549 F.2d at 728 ("[E]ven though his acts may have exceeded his express authority, this did not necessarily strip petitioner of his lawful power to act under the scope of authority given to him under the laws of the United States."); *Livingston*, 443 F.3d at 1227–28 ("The question is not whether federal law expressly authorizes violation of state law, but whether the federal official's conduct was reasonably necessary for the performance of his duties."); *Baucom*, 677 F.2d at 1350 ("In *Neagle*, it was held that the necessary authority could be derived from the general scope of the officer's duties.").

***Second***, even if the Court is not prepared to rule summarily on Mr. Meadows's Supremacy Clause immunity, it should at a minimum promptly accept removal in order to stay the state-court proceedings against Mr. Meadows. By statute, the Court is directed "promptly" to consider whether to accept removal, *see* 28 U.S.C. § 1455(b)(5), and whenever the court "determines that removal shall be permitted, it shall so notify the State court . . . which shall proceed no further," *id.* § 1455(c). Mr. Meadows's entitlement to removal is clear and does not turn on any disputed facts. The standard for removal, moreover, is even easier to meet than the standard for asserting a substantive federal defense. *See Caver*, 845 F.3d at 1145 (explaining that removal under § 1442 was proper where the defendant's federal defense was "plausible" and then separately analyzing the actual merits of that defense).

Prompt acceptance is also important to stay the state-court proceedings. The Supremacy Clause provides "immunity from suit rather than a mere shield against liability." *Tanella*, 374 F.3d at 147. The issue should be "decided early in the proceedings so as to avoid requiring a federal officer to run the gauntlet of standing trial and having to wait until later to have the immunity issue decided." *Id.* (cleaned up). Requiring Mr. Meadows to litigate his defenses in parallel in state court would inflict the very injury that Supremacy Clause immunity protects against—both for Mr. Meadows's own sake and for the sake of other federal officials who might be chilled by the prospect of their own state-court prosecution.

\*     \*     \*     \*     \*

The Court should promptly dismiss the charges against Mr. Meadows, or at a minimum, accept removal so as to stay the state-court proceedings.

Dated: August 15, 2023

Respectfully submitted,
MARK R. MEADOWS
*By Counsel*

Joseph M. Englert
MᴄGᴜɪʀᴇWᴏᴏᴅs LLP
1230 Peachtree St., N.E., Suite 2100
Georgia Bar No. 112409
Atlanta, GA 30309
(404) 443-5500
jenglert@mcguirewoods.com

George J. Terwilliger, III\*
John S. Moran\*
Michael Francisco\*
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Washington, DC 20006
(202) 857-1700
gterwilliger@mcguirewoods.com
jmoran@mcguirewoods.com
mfrancisco@mcguirewoods.com

\* Application for admission *pro hac vice* forthcoming