Anne Chapman (#025965)
Lee Stein (#012368)
Kathleen E. Brody (#026331)
anne@mscclaw.com
lee@mscclaw.com
kathy@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
2600 North Central Avenue, Suite 1000
Phoenix, AZ 85004
Telephone: (602) 358-0290
Facsimile: (602) 358-0291

George J. Terwilliger III*
P.O. Box 74
Delaplane VA 20144
George@gjt3law.com
*Pro Hac Vice

*Attorneys for Mark Meadows*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, | No. CV-24-02063-001-PHX-JJT |
| Plaintiff, | Maricopa County Superior Court<br>Case No. CR2024-006850-018 |
| v. | |
| Mark Meadows, | **DEFENDANT'S BENCH MEMORANDUM REGARDING EVIDENTIARY STANDARD FOR REMOVAL HEARING** |
| Defendant. | |

Counsel are filing this bench memo because we recently received notice that the State plans to present evidence at the removal hearing that counsel contend is inadmissible and not relevant to the Court's removal decision and wanted to provide the Court with this brief memo addressing the evidentiary standards and burden of persuasion. Counsel also anticipate filing a motion *in limine* based on the State's proposed evidence.

The State has suggested that the Court should resolve any and all factual disputes under a preponderance-of-the-evidence standard before deciding whether to permit Defendant Mark R. Meadows to remove his case to federal court, citing *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014). But the State misstates the Ninth Circuit's holding in *Leite*, which in fact makes clear that removal should be assessed under the deferential Rule 12(b) standard and that resolving factual disputes regarding Mr. Meadows's immunity defense is premature at the removal stage. Indeed, *Leite* and related considerations only confirm that the Court should promptly grant removal to establish a federal forum for adjudication of the federal issues raised in Mr. Meadows's notice of removal and the State's opposition.

**I.   Under *Leite v. Crane Co.*, the Court Must Apply the Deferential Rule 12(b) Framework to Mr. Meadows's Notice of Removal and Should Not Prematurely Address Merits Issues**

The Ninth Circuit in *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014), held that, when a party opposing removal challenges factual averments in the notice of removal, the reviewing court should apply the deferential standard applicable under Rule 12(b) to a motion to dismiss—including "[a]ccepting the [removing party's] allegations as true and drawing all reasonable inferences in [his] favor" to "determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.* at 1121. Consistent with Mr. Meadows's prior arguments, the Court confirmed that "a defendant invoking § 1442(a)(1) 'need not win his case before he can have it removed.'" *Id.* at 1124 (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). The removing official only needs to establish "that [his federal] defense is 'colorable.'" *Id.* (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). And in assessing the connection or relationship between the charged conduct and the officer's federal role, the Court confirmed that it was necessary to "credit the defendant's theory of the case." *Id.* (citing *Acker*, 527 U.S. at 432; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)).

The Ninth Circuit applied that standard in a straightforward manner in *Leite* itself to allow removal notwithstanding the plaintiff's challenges to the defendant's factual

assertions. The federal-contractor defendant removed the case to federal court under § 1442(a) asserting "the government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)," under which "Crane [would] ultimately have to prove that (1) the Navy exercised its discretion and approved certain warnings for Crane's products, (2) Crane provided the warnings required by the Navy, and (3) Crane warned the Navy about any asbestos hazards that were known to Crane but not to the Navy." *Leite*, 749 F.3d at 1123. The Court recognized that Defendant Crane had submitted "affidavits [to] establish that it has a colorable federal defense," and that there was a sufficient connection "between plaintiffs' claims and the actions Crane took at the direction of a federal officer." *Id.* at 1123–24.

The Court in *Leite* focused on the fact that "the very act that form[ed] the basis of plaintiffs' claims" was "an act that Crane contend[ed] it performed under the direction of the Navy," *id.* at 1124—just as here the State's charges rest on actions that Mr. Meadows contends he performed as Chief of Staff to the President. The Ninth Circuit acknowledged that "Crane may not be right—indeed, it may be that the Navy had nothing to do with Crane's failure to warn." *Id.* But that was a merits question that in no way affected removability; indeed, it proved why removal was necessary. "[T]he question 'whether the challenged act was outside the scope of [Crane's] official duties, or whether it was specifically directed by the federal Governments, is one for the federal—not state—courts to answer.'" *Id.* (quoting *Isaacson*, 517 F.3d at 138; citing *Willingham*, 395 U.S. at 407).

The same analysis leads to the same conclusion here. Mr. Meadows has adequately alleged, and supported with competent evidence, that his charged conduct is connected or related to his conduct as Chief of Staff to the President. That establishes not just a sufficient basis for federal jurisdiction but also the need to allow Mr. Meadows a federal forum to assert his Supremacy Clause immunity defense. The State will be entitled, on the merits, to dispute Mr. Meadows's factual account and otherwise to argue that the Supremacy Clause does not bar this prosecution. But those are merits questions

which, under *Willingham* and *Leite*, are premature to resolve at this stage—just as resolving the merits of a plaintiff's substantive claims would be premature on a Rule 12(b) motion.

Against this backdrop, it is obvious that the State's cherry-picked summation of *Leite* is off base. The State latches onto the Ninth Circuit's explanation that, when a party opposes removal by "contest[ing] the truth of the [removing party's] factual allegations, . . . the [removing party] must support her jurisdictional allegations with competent proof," and "if the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." 749 F.3d at 1121–22. But contrary to the State's characterization, this statement from the Court of Appeals does not require Mr. Meadows to prove his version of events at the removal stage or permit the State to attack his immunity defense preemptively. Recall that, under *Leite* and controlling Supreme Court precedent, the removing official only needs to establish "that [his federal] defense is 'colorable,'" *id.* at 1124 (quoting *Acker*, 527 U.S. at 431); he "'need not win his case before he can have it removed,'" *id.* at 1124 (quoting *Willingham*, 395 U.S. at 407); and the court must "credit [his] theory of the case," *id.* (citing *Acker*, 527 U.S. at 432).

Indeed, the State omits the Court of Appeals' own critical footnote to its statement about resolving factual disputes: "The caveat is that a court ***must leave the resolution of material factual disputes to the trier of fact*** when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1122 n.3 (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)) (emphasis added).[1] That key point

---

[1] *See also Safe Air for Everyone*, 373 F.3d at 1039 ("[J]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and . . . are warranted [only] 'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'") (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)); *Augustine*, 704 F.2d at 1077 ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a

-4-

and the Ninth Circuit's analysis in *Leite* itself put the State's argument to bed. Even if the State could raise some factual issues that might be relevant to whether Mr. Meadows's conduct is connected to his official rule or whether he has a colorable defense, those issues would be so factual intertwined with the merits of his Supremacy Clause immunity defense that it would be improper for the Court to adjudicate them at this stage.

In *Leite* itself, the plaintiffs submitted voluminous evidence that, they contended, disproved Defendant Crane's government-contractor defense. *See* 749 F.3d at 1122 ("In support of their factual attack, plaintiffs have submitted extensive evidence outside the pleadings, including military specifications, technical manuals, warning label guides, and deposition excerpts."). The Court therefore assessed whether Defendant Crane had supported removal with competent evidence, concluding that its affidavits sufficed. *See id.* at 1123–24. But while the Court referenced the preponderance-of-the-evidence standard, it was still focused on assessing only whether Crane had done enough to establish jurisdiction. The Court decidedly did *not* purport to adjudicate the parties factual disputes—*e.g.*, about what the Navy had in fact required of Crane—by a preponderance standard. Rather, the Court made clear that those were merits issues that (i) were premature to resolve at the removal stage and (ii) needed to be resolved in federal court, rather than state court. Just so here.

### II. *Leite*'s Admonition Against Premature Merits Determinations Applies *a Fortiori* Here Where the State's Arguments Concern the Functions of the President and His Seniormost Advisor, Implicating the Separation of Powers Under *Cheney v. U.S. District Court*

The Ninth Circuit's decision in *Leite* suffices on its own to refute the State's effort to pre-litigate Mr. Meadows's immunity defense by attacking his assertions that the charges are connected or related to his conduct as Chief of Staff to the President. But the unique nature of that role as the seniormost advisor to the President of the United States

---

determination of the relevant facts on either a motion going to the merits or at trial.") (citing *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); WRIGHT & MILLER, "Motions to Dismiss—Lack of Jurisdiction Over the Subject Matter," 5B FED. PRAC. & PROC. CIV. § 1350 (4th ed.)).

further establishes, under the Separation of Powers and the Supreme Court's decision in *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), that it would be improper for the Court to deny removal based on its estimation of the limits of the Chief of Staff role.

*Cheney* arose from a legal dispute concerning a group, the National Energy Policy Development Group, that advised Vice President Dick Cheney and others on energy policy and whether that group was subject to the requirements of the Federal Advisory Committee Act. The Supreme Court held that discovery against the Vice President and other senior Executive Branch officials implicated the Separation of Powers and the lower courts had erred in ignoring those objections. *See id.* at 383–91. In the process, the Court emphasized "the unique position in the constitutional scheme that the Office of the President occupies" and the critical importance of "prevent[ing] a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Id.* at 382 (cleaned up); *accord Clinton v. Jones*, 520 U.S. 681, 701 (1997) ("'[T]he separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties.'") (quoting *Loving v. United States*, 517 U.S. 748, 756 (1996)). The senior position of the Vice President and other targeted aides were particularly relevant to the Court's analysis.[2] The Court held that sensitivity to judicial intrusion upon their prerogatives "'should inform the conduct of the entire proceeding, including the timing and scope of discovery.'" *Cheney*, 542 U.S. at 385 (quoting *Clinton*, 520 U.S. at 707). The Court therefore dismissed the plaintiffs' "reliance on cases that do not involve senior members of the Executive Branch." *Id*.

---

[2] *See Cheney*, 542 U.S. at 385 ("The discovery requests are directed to the Vice President and other senior Government officials who served on the NEPDG to give advice and make recommendations to the President. The Executive Branch, at its highest level, is seeking the aid of the courts to protect its constitutional prerogatives. As we have already noted, special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated.").

This case involves removal jurisdiction under § 1442(a), not fact discovery, but the Separation of Powers implications are just as stark. The State is asking the Court (a) to force a former White House Chief of Staff to defend himself against a state prosecution in state court and (b) to do so because, the State says, he exceeded the scope of his authority as Chief of Staff to the President. And because the State's opposition does not rest on Mr. Meadows's status as a *former* officer, its theory would allow it to bring the same sort of prosecution against a *current* Chief of Staff or other senior Presidential aide. It is clear that both circumstances—(a) allowing a state-court prosecution and (b) making a judicial assessment of the limits of the Chief of Staff's authority—have far more significant implications for the prerogatives of the Office of the President than would mere fact discovery. *Cf. Trump v. United States*, 144 S. Ct. 2312 (2024) ("Criminally prosecuting a President for official conduct undoubtedly poses a far greater threat of intrusion on the authority and functions of the Executive Branch than simply seeking evidence in his possession, as in *Burr* and *Nixon*.").

Under our constitutional structure, it is simply not for the courts, or for the States, to define the scope of duties of the Chief of Staff to the President of the United States—and certainly not to do so in the context of subjecting the Chief of Staff to criminal prosecution in state court without recourse to the federal forum Congress provided in § 1442(a). The Court need not reach that point because, as explained above, *Leite* already establishes that it is improper to resolve factual scope-of-authority disputes at the removal stage, even for a private federal contractor. But even if there were some residual doubt, the Separation of Powers would counsel against the Court's parsing of the Chief of Staff role in the way the State invites.

**III.  The State's Proffered Evidence—from White House Sources Concerning White House Affairs—Only Confirms That a Federal Forum Is Necessary and Appropriate**

The nature of the evidence the State puts forward further confirms that purported factual disputes it relies on are "'for the federal—not state—courts to answer.'" *Leite*, 749 F.3d at 1124 (quoting *Isaacson*, 517 F.3d at 138; citing *Willingham*, 395 U.S. at

-7-

407). With this evidence, the State asks the Court to adjudicate the scope of the official duties of the White House Chief of Staff—a quintessentially *federal* issue. That evidence includes: an affidavit from a journalist who has written about the Chief of Staff role; a law professor and former White House lawyer who is relying, in part, on interviews of former White House employees and officials; the Attorney General's case agent, who is relying, in part, on interviews of former White House employees and officials; Mr. Meadow's text messages; and Mr. Meadow's call logs with a former Arizona Republican party official, Kelli Ward.

If this prosecution truly was not "*connected* or *associated*[] with acts under color of federal office," *DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (9th Cir. 2023), then one would not expect to see this type of evidence. Instead, if Mr. Meadows were charged with a crime unrelated to his office, one would expect to see evidence that was equally unrelated to his office—such as an eyewitness to a bar fight. The very fact that the State's case turns on White-House-specific evidence proves that its charges are, at a minimum, connected to or associated with Mr. Meadows's role as Chief of Staff to the President.

**IV.    The State's Reliance on Even One Act Connected or Related to Mr. Meadows's Federal Role Would Suffice to Federal Jurisdiction**

A prosecution is removable if any part relates to an "act under color of [federal] office." 28 U.S.C. § 1442(a)(1). Thus, the removal is required if the State's charge "relates to or is associated with" even one act within "the outer perimeter" of Mr. Meadows's federal role. This conclusion is bolstered by the Supreme Court's recent Presidential immunity decision in *Trump v. United States*, 144 S. Ct. 2312 (2024), which held that the constitutional Separation of Powers prohibits the prosecution from any "[u]se of evidence about [official] conduct," *id.* at 2341. While that decision addresses a former President's immunity from *federal* prosecution, its reasoning further bolsters the case for immunity from *state* prosecution for the President and his seniormost advisors. And as relevant here, it demonstrates why federal jurisdiction is necessary and appropriate to ensure that a federal court—rather than a state court—stands ready to ensure that the prosecution does not rely on *any* federal official act to support its

-8-

prosecution.

Two particular aspects of the statutory text confirm that § 1442(a) allows removal where the State's charges implicate even a single official act: (a) the Federal Officer Removal Statute refers to removal of "[a] civil action or criminal prosecution," not to removal of particulars claims, counts, or theories that are asserted in a civil or criminal case;[3] and (b) the statute authorizes removal of criminal prosecutions "against or directed to" a federal officer "for or relating to *any act* under color of [federal] office." 28 U.S.C. § 1442(a) (emphasis added).[4] The statutory text itself thus shows that the case would be removable if the State's charges related to Mr. Meadows's official duties even in part.[5] It is also hornbook law that §1442(a)(1) "authorizes removal . . . even if only one of the controversies it raises involves a federal officer." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3726 (rev. 4th ed. 2009).

What controls, moreover, is Mr. Meadows's articulation of his federal defense, not the State's articulation of its state charges. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 (2006) (explaining that § 1442(a) "is an exception to the 'well-pleaded complaint' rule" and allows "'suits against federal officers [to] be removed despite the nonfederal cast of the complaint'") (quoting *Franchise Tax Bd. of Cal. v. Construction*

---

[3] Federal courts similarly construe 28 U.S.C. § 1441, which provides for removal of a "civil action" over which federal jurisdiction exists. *See, e.g.*, *Ladies Mem'l Ass'n Inc. v. City of Pensacola, Fla.*, No. 3:20CV5681/MCR/ZCB, 2023 WL 2561785, at *3 (N.D. Fla. Mar. 17, 2023) ("If the complaint contains 'even one federal claim[,]' then the defendant has 'the right to remove the entire case to federal court.'") (quoting *Convent Corp. v. City of N. Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015)).

[4] *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017) (removal required where an officer asserts a federal defense to even one claim).

[5] *See also Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) ("Assuming for the sake of argument that some of the [plaintiff's] allegations . . . do not relate to the [defendants'] acts under color of federal office, 'removal need not be justified as to all claims . . . ; rather, the defense need only apply to one claim to remove the case."); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602 (5th Cir. 2018); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017).

*Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 10 (1983); *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)); *accord Leite*, 749 F.3d at 1124.[6]

Indeed, federal courts have made clear that a plaintiff (or here, the State) cannot evade removal even by expressly disclaiming reliance on official acts. *See* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3726 (rev. 4th ed. 2009);[7] *In re Asbestos Prod. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741–43 (E.D. Pa. 2011). Normally, "an action may be removed . . . only if a federal district court would have original jurisdiction," which means that any "federal question ordinarily must appear on the face of a properly pleaded complaint" and "an anticipated or actual federal defense generally does not qualify a case for removal." *Acker*, 527 U.S. at 430–31. But the Supreme Court has explained that federal officer removal is "exceptional in this regard. Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Id.* at 431. Here, Mr. Meadows has pleaded and supported with competent evidence a connection between the State's case and his official duties and has asserted a colorable federal defense; that is all he needs to do. *See Leite*, 749 F.3d at 1123–24.

---

[6] Indeed, even after removal, "entitlement to Supremacy Clause immunity is to be ascertained by looking only at federal law." S. Waxman & T. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233 (2003); s*ee Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920). The whole point is that federal officials are supposed to form their conduct to federal law and their federal duties, not to the contours of state law.

[7] *Id.* (explaining that "purported disclaimers" of reliance on official acts are "ineffective, as impermissibly attempting to deprive federal officers of their right to have jurisdiction under the federal officer removal statute determined by a federal court under the requirements established by Section 1442").

### V. The History of 28 U.S.C. 1455 Confirms That, in Providing for an "Evidentiary Hearing," Congress Did Not Intend to Impose Any Evidentiary Burden on a Removing Official

The federal criminal removal provision refers to an "evidentiary hearing," 28 U.S.C. § 1455(b)(5), but lest there be any doubt, that reference imposes no substantive or evidentiary burden on a removing official.

Before the 1970s, civil and criminal cases were both governed by the procedures outlined in § 1446. The Rules Committee then proposed, and the Supreme Court endorsed, a Proposed Rule 40.1 to establish new procedures for removal of criminal cases. *See* Amendments to Federal Rules of Criminal Procedure, 425 U.S. 1157, 1163–64 (1975). Proposed Rule 40.1 introduced the procedures now reflected in § 1455, subject to specific tweaks Congress made on timing. *Compare id.*, *with An act to approve with modifications certain proposed amendments to the Federal Rules of Criminal Procedure* § 3, Pub. L. 95-78, 91 Stat. 319, 321–22 (July 30, 1977). Under the Rules Enabling Act, Proposed Rule 40.1 could "not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072, and nothing in the statutory modifications suggests that Congress meant to impose a new substantive burden either. To the contrary, the changes were meant "to minimize the disruption and unnecessary delay . . . from frivolous and dilatory petitions for removal . . . but, at the same time, provide ***a fair opportunity for the defendant with grounds for removal to have his petition heard***." S. Rep. 95-354, *reprinted in* 1977 U.S.C.C.A.N. 527 (July 20, 1977) (emphasis added). Consistent with that understanding, federal courts have dispensed with the evidentiary hearing where it was not necessary. *See, e.g.*, *Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006).

//
//
//
//
//
//

RESPECTFULLY SUBMITTED on September 3, 2024.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By: */s/ Anne Chapman*
    Anne Chapman
    Lee Stein
    Kathleen E. Brody

    George J. Terwilliger III*
    * *Pro Hac Vice*

    *Attorneys for Defendant Mark Meadows*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, I electronically transmitted the attached Notice of Pending Motions with the Clerk of the Court using the CM/ECF System, which will send notification of filing to all registered parties.

*/s/ B. Wolcott*