KRISTIN K. MAYES
ATTORNEY GENERAL
(FIRM STATE BAR NO. 14000)

NICHOLAS KLINGERMAN (STATE BAR NO. 028231)
KRISTA WOOD (STATE BAR NO. 025503)
CASEY D. BALL (STATE BAR NO. 034987)
HALEIGH FARRELLY (STATE BAR NO. 035247)
ASSISTANT ATTORNEYS GENERAL
2005 N. CENTRAL AVENUE
PHOENIX, ARIZONA 85004
TELEPHONE: (602) 542-4686
CRMFRAUD@AZAG.GOV
CADOCKET@AZAG.GOV

ATTORNEYS FOR THE STATE OF ARIZONA

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| State of Arizona, | CV-24-02063-PHX-JJT |
|---|---|
| Plaintiff, | |
| -vs- | **Response to Mark Meadows' Bench Memorandum Regarding Evidentiary Standard for Removal Hearing** |
| Mark Meadows, | |
| Defendant. | |

Pursuant to this Court's order of September 5, 2024, the State of Arizona submits this response to Defendant Mark Meadows' bench memorandum filed September 3, 2024. The State takes each of Meadows' points in turn.

**I. The standard proposed by Meadows blends the burdens for factual and facial attacks on the notice of removal; the State has raised a factual challenge and Meadows bears the burden of meeting the requirements of removal by a preponderance of the evidence.**

Meadows contends the State is mistaken in arguing that he must show by a preponderance of the evidence that his case qualifies for removal. Doc. 9, at 2. But his argument is based on a misreading of *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014).

In *Leite*, the Ninth Circuit analogized federal officer removal to the standards required to invoke the federal court's subject-matter jurisdiction, noting that the

party opposing federal jurisdiction may launch a facial attack or a factual attack, and detailing the different standards based on that choice. *Id.* at 1121–22. Meadows states that this court must accept his allegations as true and draw all reasonable inferences in his favor to determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Doc. 9, at 2, *citing Leite*, 749 F.3d at 1121. That is the approach on a *facial* challenge.

The State is making a factual challenge. Meadows argued at the evidentiary hearing that this was a facial challenge, but both parties supported their briefing with evidence outside the indictment. *See Leite*, 749 F.3d at 1121–22 ("A 'factual' attack … contests the truth of the [removing party's] factual allegations, usually by introducing evidence outside the pleadings."). In a factual challenge, the presumptions in favor of Meadows are no longer available. Rather, Meadows must now support his removal notice with "competent proof" and "bears the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction have been met." *Id.* at 1122; *cf. Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010) (noting that SEC 10-K form listing principal executive offices, without more, is not "competent proof" to establish corporate "nerve center" for diversity jurisdiction question). Meadows correctly states that he need not win his case before he can have it removed, that he need only establish that his defense is colorable, and that the court will "credit the defendant's theory of the case" in evaluating the causal nexus. Doc. 9, at 2; *Leite*, 749 F.3d at 1122, 1124. But in a factual challenge, Meadows cannot remove the case merely by relying on conclusory assertions. *Cf. Georgia v. Clark*, 1:23-CV-03721-SCJ, 2023 WL 7012663, at *4, *9 (N.D. Ga. Sept. 29, 2023) (slip opinion) (finding Clark "failed to offer sufficient evidence that the acts alleged in the Indictment related to the color of his office" when Clark "did not submit any witness testimony, and only referred to two declarations that were filed on the docket . . . prior to the evidentiary hearing").

Meadows next relies on *Leite* to illustrate that his burden for removal is low, but *Leite* is distinguishable from this case generally, and from Meadows' bare-bones approach to his removal request specifically.

In *Leite*, the defendant company, Crane, was sued in a failure-to-warn case arising out of asbestos exposure related to equipment that Crane sold to the United States Navy. *Id.* at 1119–20. Crane sought to remove, citing its position as a federal contractor. *Id.* at 1120. Crane claimed the government contractor defense applied and attached "extensive testimonial and documentary evidence" detailing the Navy's procurement policies (including required warnings), the Navy's awareness of asbestos risks, and an opinion that the Navy "knew at least as much about asbestos hazards as equipment manufacturers like Crane." *Id.* Plaintiffs challenged the evidence as speculative and improper expert opinions, and submitted their own evidence, including military specifications, technical manuals, warning label guides, and deposition excerpts. *Id.* at 1122.

The Ninth Circuit first addressed the contractor defense, noting that Crane's affidavits were evidence that the Navy issued detailed specifications about warnings and that Crane was only permitted to include information "to the extent directed by the Navy." *Id.* at 1123. The affidavits also indicated that the Navy would have rejected more detailed warnings about asbestos hazards. *Id.* Plaintiffs argued that this latter evidence was unreliable, but the Court concluded that Crane's affidavits were enough to show that the Navy exercised its discretion by prescribing warnings and prohibiting others. *Id.* at 1124. Plaintiffs did not challenge Crane's other evidence regarding additional elements of the government contractor defense. Thus, the Ninth Circuit concluded that Crane had met its burden of showing a colorable defense by a preponderance of the evidence. *Id.*

The Ninth Circuit also concluded that Crane had proved a causal nexus between plaintiffs' claims and Crane's actions as a federal contractor. It declined to determine whether Crane was *correct* in claiming its actions were due to its work

with the Navy, instead noting that "the very act that forms the basis of" the plaintiffs' claims was the act Crane claimed to have carried out for the government. *Id.* at 1124.

In a claim based on a government contract, like that in *Leite* or another case cited by Meadows, *DeFiore v. SOC LLC*, 85 F.4th 546 (9th Cir. 2023), the defendant's nexus and federal defense claims either need little analysis or would require resolution of disputed facts that are intertwined with the merits. *See Leite*, 749 F.3d at 1122 & n.3. The mere relation of the federal contract to the actions creates the causal nexus. *See, e.g.*, *DeFiore*, 85 F.4th at 557–58 (labor claims against federal contractors occurred while contractors "discharged their security duties" in Iraq War). And to the extent there is some dispute, that would be a factual one about the scope of the contract, and therefore the merits of the case itself.

But that is not the case here. Meadows' authority is defined by law (not by disputed contractual terms), and Meadows bears the burden of proving removal is necessary. In contrast with the many affidavits and other evidence filed by Crane in *Leite*, Meadows relies mostly on his self-serving testimony in the Georgia case. In that testimony and in his briefing, he defines the color of his office as essentially limitless. But he provides no legal or factual support for this interpretation other than his self-serving job description (which was not subject to cross-examination here). He cannot simply point to federal contractor cases and claim that nothing is required of him beyond bare assertion. *See Leite*, 749 F.3d at 1123–24 (detailing evidence provided by Crane to support removal).

Further, the Eleventh Circuit has already rejected Meadows' approach at each step. First, as he did in Georgia, Meadows attempts to redefine the case as prosecuting individual acts (such as receiving text messages) referenced in the speaking portion of the indictment, rather than the actual charges. But the Eleventh Circuit concluded that courts must look at the "heart of the indictment" for the acts supporting removal. *State v. Meadows*, 88 F.4th 1331, 1344 (11th Cir. 2023). Here, the conspiracy and fraud schemes charges are the "heart" of the prosecution and do

not rely on separate individual acts but rather a series of acts and a culpable mental state. As in Georgia, Meadows' culpability "does not depend on any one discrete act," meaning he "cannot remove by proving that one act was undertaken in his official capacity." *Id.* at 1345.

Similarly, the Eleventh Circuit rejected Meadows' request that it credit his "theory of the case" as to the color of his office based mostly on his self-serving testimony that his duties were "nearly limitless." *Id.* Again, there, the Court looked at the law and the heart of the State's claims—that Meadows had no role in supervising state elections or in electioneering—and concluded that it could not simply credit Meadows' unsupported assertions. *Id.* at 1345–46. The Eleventh Circuit reached a similar conclusion on the causal nexus. *Id.* at 1348–49. Unlike the cases on which Meadows relies, this court is not required to resolve a factual dispute or even disputed interpretations of a law, and need not credit unsupported assertions.

In this case, Meadows provided less support for his untimely removal motion than he did in Georgia. He did not dispute the existence of the text messages that underpin the State's case. He argued they lacked context, but provided no further context. He also proffered the same self-serving testimony that failed in Georgia and declined to testify and subject himself to cross-examination on those claims.

In sum, the State presented a factual challenge to jurisdiction, triggering the preponderance-of-the-evidence standard found in *Leite*, 749 F.3d at 1121–22. But unlike *Leite*, Meadows' argument does not require resolving factual disputes that intertwine with the merits of the State's prosecution, and Meadows' bare assertions need not be credited by this Court. *Leite* and other federal contractor cases are distinguishable.

II. ***Cheney v. U.S. District Court for the District of Columbia* is inapposite.**

Meadows also argues, for the first time in his bench memo, that it would be improper to deny removal based on this court's "estimation of the limits of the Chief of Staff role," citing *Cheney v. U.S. District Court for the District of Columbia*, 542

U.S. 367 (2004). He acknowledges that *Cheney* was not a removal case, and was premised on the separation of powers. Doc. 9, at 5–6.

*Cheney* involved an action in mandamus in which the vice president and an energy policy group (all federal employees) were the subjects of discovery orders. 542 U.S. at 381–82. Key to the opinion was the fact that one of the parties to the case was the vice president, and the Court expressed concern about placing courts "in the awkward position of evaluating the Executive's claims of confidentiality and autonomy." *Id.* at 381, 389. The Court concluded that the lower court erred by requiring the government to assert executive privilege before making separation-of-powers argument, and remanded. *Id.* at 391–92.

But *Cheney* is not a removal case, and it cannot be grafted onto a removal case, as this type of separation-of-powers argument would limit the ability of *any* court to determine the scope of Meadows' duties, including this court. In context, Meadows makes an argument not for denying removal, but for gutting existing federal removal statutes and case law based on an out-of-context reference to a case that merely remanded for the lower courts to do more analysis before issuing a writ of mandamus. *Id.* at 391–92. *Cheney* is inapposite.

### III. Nothing about the nature of the State's evidence requires removal.

Meadows contends that the State's proffered evidence demonstrates that federal removal is required, positing a hypothetical that if he had participated in a bar fight, the State would not need to introduce evidence of his text messages or call logs, or discuss the scope of the role of Chief of Staff. Doc. 9, at 7–8. But this type of evidence is *exactly* what one would expect from a person who carried out his personal tasks during the workday. In Meadows' analogy to the bar fight, if he had discussed his involvement in the bar fight during the workday with campaign staffers, state-level politicians, and Kelli Ward, and then tried to remove his State charges to federal court, the State would very likely use the same type of evidence

used here. But more analogous would be an offense that can be committed via cell phone during the workday, like arranging a drug deal.

Further, it should be noted that during the evidentiary hearing, Meadows seemed to argue that the personal/official dichotomy was unworkable because a person in Meadows' position would be forced to end a call if it turned out to be personal or political. But that is not what the State is arguing—Meadows can still take the call (setting aside hypothetical circumstances that may suggest a Hatch Act violation). When he takes that personal call, however, a state criminal prosecution arising out of that call need not be transferred to federal court *simply because Meadows has his title* or *simply because Meadows is standing in the White House* when he takes the call. The nature of the call is important for removal analysis, but does not mean that Meadows could never answer a personal call at work. More importantly, Meadows is not charged here with taking a phone call or receiving a text message—he is charged with participating in a conspiracy to commit fraud schemes and artifices and forgery, both as a principle and an accomplice. Meadows did not simply witness crimes or receive evidence of crimes, but actively perpetuated them.

IV. **Meadows' broad "one act" claims fail.**

As he did in Georgia, Meadows argues that because removal is authorized for officers of the United States "for or relating to *any* act under color of such office," then it is authorized if any of the State's charges against him are "related to Mr. Meadows's official duties even in part." Doc. 9, at 8–9. He also argues that his mere articulation of a federal defense authorizes removal. Doc. 9, at 9–10.

Meadows' own cases indicate that it is the *claim* that defines the act, not the "part" of a claim or his generic description of his actions (i.e. sending a text) as being within his duties of office. Meadows cites *Ladies Mem'l Ass'n Inc. v. City of Pensacola, Fla.*, 662 F. Supp. 3d 1212, 1217 (N.D. Fla. 2023), in which the complaint included two claims of violations of the National Historical Preservation

Act and one claim involving federal civil rights; the entire complaint, including the state law claims, was removed. In *Jefferson County v. Acker*, 527 U.S. 423, 432–33 (1999), the judges who sought removal had failed to pay taxes that were assessed because they held a certain position—they were taxed simply because they worked in the county as federal judges. In Meadows' case, the State's indictment is based on his actions of violating Arizona state law, and the core of the charges focus on actions taken by Meadows outside of his role as chief of staff.

Meadows also argues that his claim of a federal defense "controls." Doc. 9, at 9. While it is true that a case can be removed "despite the nonfederal cast of the complaint," a colorable federal defense is just one element Meadows must show to qualify for removal. *Acker*, 527 U.S. at 431. His articulation of the defense does not "control" anything. Both in his pleadings and at the removal hearing, Meadows seemed to merge his colorable federal defense burden with his burden to show the charges have a causal nexus to his official duties. The claims are separate and he must show both by a preponderance of the evidence.

And, as the State argued in its response to Meadows' notice of removal, he has not met his burden of showing a colorable Supremacy Clause claim where he has provided no evidence that his actions were authorized by law, and the only evidence indicates he acted out of personal interest in the election. *See Idaho v. Horiuchi*, 253 F.3d 359, 366 (9th Cir.) (defendant must have no motive other than to do his job), *vacated as moot*, 266 F.3d 979 (9th Cir. 2001); *Clifton v. Cox*, 549 F.2d 722, 720 (9th Cir. 1977) (defense unavailable if evidence shows federal officer acted "out of malice or with some criminal intent"). Meadows' mere claim of a potential federal defense, and his claim that communicating with people was part of his job, do not meet the burden required of him for removal.

**V. While an evidentiary hearing is not always required for removal, Meadows still bears the burden.**

Meadows appears to argue that he had no evidentiary burden and that hearings are not always required for removal. While there are certainly situations where remand for an evidentiary hearing is not required, such as in *Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006), that does not alter Meadows' burden of proof.

In *Livingston*, the State did not dispute that the defendants were federal officials and that they had a colorable federal offense, and the State had no factual disputes it needed resolved on remand. *Id.* The Court concluded that any error was harmless because a remand for an evidentiary hearing would have been futile. *Id.* at 1226.

Meadows, of course, did not *have* to put on evidence at the evidentiary hearing. But Meadows has to show by a preponderance of evidence that the requirements for removal were met, *Leite*, 749 F.3d at 1122, and he had the option of putting on evidence to support his claim.

Respectfully submitted this 11th day of September, 2024.

          Kristin K. Mayes
          Attorney General

          s/ Nicholas Klingerman
          Assistant Attorney General
          Attorneys for the State of Arizona

**CERTIFICATE OF SERVICE**

     I hereby certify that on September 11, 2024, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and served the attached document using ECF, who is a registered participant of the ECF System:

Anne Chapman
Lee Stein
Kathleen E. Brody
MITCHELL | STEIN | CAREY | CHAPMAN, PC
2600 North Central Avenue, Suite 1000
Phoenix, AZ 85004
anne@mscclaw.com
lee@mscclaw.com
kathy@mscclaw.com

George J. Terwilliger III*
P.O. Box 74
Delaplane, VA 20144
George@gjt3law.com
*Pro Hac Vice

Defendant's Counsel


s/ E.M.A.V.